## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TRUEPOSITION, INC.,

               Plaintiff,

v.

POLARIS WIRELESS, INC.,

               Defendant.

C. A. No. 12-646-RGA-MPT

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

#### A.   Procedural Background

On May 23, 2012, TruePosition, Inc. ("plaintiff" or "TruePosition") filed suit

against Polaris Wireless, Inc. ("defendant" or "Polaris") for infringement of U.S. Patent

No. 7,783,299 ("the '299 Patent").[1]  Polaris filed its answer and affirmative defenses on

July 27, 2012.[2]  On August 16, 2012, Polaris moved to transfer the action to the United

States District Court for the Northern District of California ("NDCA") pursuant to 28

U.S.C. § 1404(a).[3]  On September 10, 2012, TruePosition submitted its opposition to

defendant's motion to transfer,[4] and a reply brief was filed by Polaris on September 20,

2012.[5]  The issue of whether to transfer this matter is now ripe for decision.

#### B.   Legal Standard

Section 1404(a) of Title 28 provides: "[f]or the convenience of the parties and

witnesses, in the interests of justice, a district court may transfer any civil action to any

other district or division where it might have been brought."[6]  According to the Supreme

Court, § 1404(a) reflects:

---

[1] D.I. 1.
[2] D.I. 10.
[3] D.I. 14; see D.I. 15.
[4] D.I. 24.
[5] D.I. 30.
[6] 28 U.S.C. § 1404(a).

> [A]n increased desire to have federal civil suits tried in the federal system
> at the place called for in the particular case by considerations of
> convenience and justice. Thus, . . . the purpose of the section is to
> prevent waste of time, energy and money and to protect litigants,
> witnesses and the public against unnecessary inconvenience and
> expense . . . . To this end, it empowers a district court to transfer any civil
> action to another district if the transfer is warranted by the convenience of
> parties and witnesses and promotes the interest of justice.[7]

The Third Circuit has further explained § 1404(a) "was intended to vest district

courts with broad discretion to determine, on an individualized, case-by-case basis,

whether convenience and fairness considerations weigh in favor of transfer."[8]  That

court "has also emphasized that 'the plaintiff's choice of venue should not be lightly

disturbed'"[9] as "the defendant bears the burden of establishing that the balance of

convenience and fairness strongly favors the defendant."[10]  "[U]nless the balance of

convenience of the parties is *strongly* in favor of defendant, plaintiff's choice of forum

should prevail."[11]

In ruling on transfer motions, the "Third Circuit has directed district courts to

consider 'many variants of the private and public interests protected by the language of

§ 1404(a).'"[12]  While "there is no definitive formula or list of the factors to consider,"[13]

courts within the Third Circuit look to the various private and public interests identified in

*Jumara*. The private factors include:

(1) plaintiff's forum preference as manifested in the original choice; (2) the
defendant's preference; (3) whether the claim arose elsewhere; (4) the

---

[7] *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted).

[8] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

[9] *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 750 (D. Del. 2012), *mandamus denied*, *In re Altera Corp.*, M.I.S.C. 121, 2012 WL 2951522 (Fed. Cir. July 20, 2012) (quoting *Jumara*, 55 F.3d at 879).

[10] *Ivoclar Vivadent AG v. 3M Co.*, C.A. No. 11-1183-GMS-SRF, 2012 WL 2374657, at *7 (D. Del. June. 22, 2012) (citing *Jumara*, 55 F.3d at 879-80; *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).

[11] *Shutte*, 431 F.2d at 25 (quotation marks omitted) (emphasis in original).

[12] *Helicos Biosciences Corp. v. Illumina, Inc.*, 838 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Jumara*, 55 F.3d at 879).

[13] *Jumara*, 55 F.3d at 879.

convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).[14]

The public interests include:

(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.[15]

Although district courts are vested with "broad discretion" to balance these

interests on a case-by-case basis,[16] "[t]he Federal Circuit requires [them] to expressly

consider each of the *Jumara* factors to the extent that those factors are disputed."[17]

However, "while *Link_A_Media* certainly contains guidance for how this Court must

conduct its review of a motion to transfer, the decision has not altered the fundamental

fact that 'Section 1404(a) is intended to place discretion in the district court to

adjudicate motions for transfer . . . .'"[18]

## C. Positions of the Parties

In support of its motion to transfer, defendant contends the *Jumara* "private and

public interest factors strongly favor transfer"[19] and emphasizes "[t]he only connection

. . . to this venue is that [both parties were] incorporated under the laws of Delaware."[20]

Defendant attempts to bolster its position by asserting:

---

[14] *Id.* (citations omitted and numbers added).

[15] *Id.* at 879-80 (citations omitted and numbers added).

[16] *Id.* at 883.

[17] *Ivoclar*, 2012 WL 2374657, at *8 (citing *In re Link-A-Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011)); *see also Helicos,* 838 F. Supp. 2d at 872 ("Although transfer is a discretionary decision on the part of a district judge, clearly the Federal Circuit expects an analysis of all the *Jumara* factors in connection with any transfer decision issued by this court.").

[18] *Intellectual Ventures*, 842 F. Supp. 2d at 753 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

[19] D.I. 15 at 7.

[20] *Id.* at 2.

> TruePositions' patent infringement claim has no connection to the District of Delaware. The patent-in-suit has never been asserted in the District of Delaware. TruePosition's web site does not show any offices or employees or resellers in the District of Delaware. The inventors of the patent-in-suit are not located in the District of Delaware. TruePosition has admitted that it regularly does business in the NDCA and that it is subject to the personal jurisdiction of that Court.[21]

To establish its own lack of significant contacts with Delaware, defendant represents: (1) it is headquartered in the NDCA; (2) all of its products, including the accused products, were developed in the NDCA; (3) almost all of its employees are in the NDCA; (4) all of its documents are in the NDCA; (5) potential third party witnesses are located in the NDCA; and (6) it has never made a sale of any of the accused products in Delaware.[22]

In opposition, plaintiff contends defendant "wholly fails to prove that the balance of convenience strongly weighs in favor of transfer . . . [and] [a]ccordingly . . . will suffer no unique or unusual burden litigating in Delaware, its chosen state of incorporation."[23] Regarding *Jumara*, plaintiff argues the following factors, choice of forum, convenience of the parties and witnesses, practical considerations, public policies of the fora and local interests in resolving the dispute, weigh against transfer, with the remaining factors either neutral or irrelevant.[24]

In its reply brief, defendant re-asserts its previous arguments favoring transfer under *Jumara* by emphasizing the sole connection to this district is the parties' incorporation, and concludes "[t]hat lone connection is insufficient and is heavily outweighed by those factors which strongly favor transfer."[25]

## II. ANALYSIS

The first step in the transfer analysis is to determine whether this action could

---

[21] *Id.* at 1.
[22] *Id.* (numbers added).
[23] D.I. 24 at 16.
[24] *Id.*
[25] D.I. 30 at 10.

4

have been brought in the proposed transferee venue, the Northern District of California. "The party moving for transfer bears the burden of proving that the action properly could have been brought in the transferee district in the first instance."[26] Polaris claims "plaintiff, an experienced litigant in the NDCA, could have brought suit in the NDCA. Polaris maintains its headquarters and only U.S. facility in the NDCA and Polaris's activities in connection with the development of the accused products occurred in the NDCA."[27] TruePosition does not question this infringement action could have been brought in the NDCA. Accordingly, the first requirement for transfer of venue under § 1404(a) is satisfied; therefore, the analysis now shifts to consideration of each *Jumara* factor.

## A. Private Interest Factors

### i. Plaintiff's choice of forum

"[C]ourts normally defer to a plaintiff's choice of forum,"[28] which deference applies "as long as plaintiff has selected the forum for some legitimate reason."[29] While the Third Circuit has found "it is black letter law that a plaintiff's choice of forum is a paramount consideration in any transfer request,"[30] the Federal Circuit has made it clear this factor is not "effectively dispositive of the transfer inquiry."[31] Additionally, "[w]hen a plaintiff initiates a lawsuit in a venue that is not its home forum, the plaintiff's choice of forum is afforded less deference."[32] "A corporation's home forum is generally construed

---

[26] *Mallinckrodt Inc. v. E-Z-Em, Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009) (internal citations and quotation marks omitted).
[27] D.I. 15 at 7.
[28] *Jumara*, 55 F.3d at 880.
[29] *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, C.A. No. 01-199-SLR, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001).
[30] *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal citations and quotations omitted).
[31] *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011).
[32] *Ivoclar Vivadent AG v. 3M Co.*, C.A. No. 11-1183-GMS-SRF, 2012 WL 2374657, at *9 (D. Del. Jun. 22, 2012) (citing *Link_A_Media*, 662 F.3d at 1223).

5

as its principal place of business,"[33] however there are cases "from this District in which a plaintiff's 'home turf' has been construed to include its state of incorporation."[34]

The parties disagree as to the appropriate amount of weight to be given to plaintiff's choice of Delaware as the preferred forum. TruePosition insists "[its] choice of forum is 'paramount' and should not be 'lightly disturbed,'"[35] and contends no demonstration of any legitimate or rational reason has been made as to why its selection and Third Circuit, as well as, this district's precedent should be ignored.[36] Polaris emphasizes, "a plaintiff's choice of forum is entitled to less weight" where the forum chosen is not its home turf and "has little connection with the operative facts of the lawsuit."[37]

The dispute herein centers on the lack of any meaningful connection by TruePosition with Delaware beyond its incorporation as it has no offices or employees in the state.[38] However, even if Delaware is not considered TruePosition's home turf, "[n]onetheless [its] incorporation in Delaware represents a rational and legitimate reason to choose to litigate in the state,"[39] by opting "to avail [itself] of the rights,

---

[33] *Ivoclar*, 2012 WL 2374657, at *9 (citing *Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 330 (D. Del. 2009)).

[34] *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012), *mandamus denied, In re Altera Corp.*, M.I.S.C. 121, 2012 WL 2951522 (Fed. Cir. July 20, 2012) (citing *Praxair, Inc. v. ATMI, Inc.*, C.A. No. 03-1158-SLR, 2004 WL 883395, at *1-*2 (D. Del. Apr. 20, 2004)).

[35] D.I. 24 at 7 (quoting *Illumina, Inc. v. Complete Genomics, Inc.*, C.A. No. 10-649, 2010 WL 4818083, at *2 (D. Del. Nov. 9, 2010)).

[36] D.I. 24 at 7.

[37] D.I. 30 at 8 (citing *Link_A_Media*, 662 F.3d at 1223).

[38] Within the framework of its argument against plaintiff's choice of forum, defendant also posits "the forum has little connection with the operative facts of the lawsuit." D.I. 30 at 8. Although this argument may be relevant to other *Jumara* factors and will be analyzed accordingly, "in light of the rational reason supporting Plaintiff's selection of Delaware as a forum, [defendant's] argument [regarding minimal connection of operative facts] cannot be the basis to eliminate the consideration otherwise afforded to this factor." *Fuisz Pharma LLC v. Theranos, Inc.*, C.A. No. 11-1061-SLR-CJB, 2012 WL 1820642, at *11 (D. Del. May 18, 2012), *Report and Recommendation Adopted*, C.A. No. 11-1061-SLR/CJB, 2012 WL 2090622 (D. Del. Jun. 7, 2012).

[39] *Tessera, Inc. v. Sony Elecs. Inc.*, C.A. No. 10-838 (RMB) (KW), 2012 WL 1107706, at *3 (D. Del. Mar. 30, 2012) (citing *Intellectual Ventures*, 842 F. Supp. 2d at 754 (D.

benefits, and obligations that Delaware law affords. The same is true of [defendant],

. . . which is a Delaware corporation."[40] As a result, TruePosition's "choice of Delaware

as its preferred forum is entitled to, at minimum, significant deference."[41] Based on the

reasoning above, this factor weighs against transfer.[42]

### ii.   Defendant's forum preference

In support of its position, Polaris submits:

> Polaris is headquartered in the NDCA, all of its products, including the
> accused products were developed in the NDCA, almost all of its
> employees are in the NDCA, all of its documents are in the NDCA, and all
> of its real property is in the NDCA. Potential third party witnesses are also
> located in the NDCA and are therefore subject to the subpoena power of
> the NDCA. Polaris has no customers or sales people in the District of
> Delaware and has never made a sale of any of the accused products in
> the District of Delaware. No Polaris documents or witnesses are in the
> District of Delaware.[43]

TruePosition, emphasizes the weight attributable to this factor,[44] but does not

refute Polaris' legitimate and rational justifications for the alternate forum. Defendant's

choice weighs in favor of transfer, however this factor is not provided the same weight

as plaintiff's preference.

### iii.   Whether the claim arose elsewhere

"[A]s a matter of law, a claim for patent infringement arises wherever someone

has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any

---

Del. 2012) (quotation marks omitted)).

[40] *Intellectual Ventures*, 842 F. Supp. 2d at 754.

[41] *Id.* (quotation marks omitted).

[42] A key distinction between the matter at hand and *Link_A_Media*, is "the Federal
Circuit concluded that the district court placed far too much weight on the plaintiff's
choice of forum, where a non-Delaware entity, with seemingly no connection to
Delaware, filed suit in this District." *Intellectual Ventures*, 842 F. Supp. 2d at 754
(quotation marks and citations omitted). By contrast, plaintiff, in the instant case, *is* a
Delaware entity.

[43] D.I. 15 at 1.

[44] *See* D.I. 24 at 10 ("Although Polaris would prefer to litigate this case in the Northern
District of California, that preference is to be accorded little weight.").

patented invention' without authority."[45] Additionally, "[t]o some extent, the claims ar[i]se where the allegedly infringed products [are] designed and manufactured."[46] "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor."[47]

Defendant insists the relevant facts in support of plaintiff's claim arose out of alleged activities occurring in the NDCA, which have no connection to this district.[48] Plaintiff contends this factor is "neutral at best" because the infringing conduct is national and worldwide.[49] While plaintiff points to defendant's worldwide presence, citing statistics in support, it fails to address defendant's representation it "has no customers or sales people in the District of Delaware and has never made a sale of any of the accused products in the District of Delaware."[50] Similarly, plaintiff does not dispute that the accused products were developed in California.[51]

Plaintiff's claim arises from the research and development of the accused products, events which have a strong connection to the NDCA, with no articulated connection to Delaware. Therefore, this factor weighs in favor of transfer.[52]

### iv. Convenience of the parties as indicated by their relative physical and financial condition

---

[45] *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35. U.S.C. § 271(a)).

[46] *Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012); *see also Intellectual Ventures*, 842 F. Supp. 2d at 755 (finding claim arose where "the record so far indicates that at least some of the research and development activities relating to the allegedly infringing products occurred in [the proposed transferee district], and none in Delaware").

[47] *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

[48] D.I. 15 at 10.

[49] D.I. 24 at 13.

[50] D.I. 15 at 1.

[51] *Id.*

[52] *See Fuisz Pharma*, 2012 WL 1820642, at *12 ("Because it appears that the operative events giving rise to the Plaintiff's claim of infringement have a strong connection to the Northern District (and no articulated connection to Delaware), this factor weighs in favor of transfer.").

To analyze this convenience element,[53] the court considers:

> (1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal.[54]

The court also "factor[s] in the parties' states of incorporation in evaluating the convenience of the parties' private interest" as evidenced by "a long line of decisions from this District, which make it plain that a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself."[55] "Unless the defendant 'is truly regional in character' – that is, it operates essentially exclusively in a region that does not include Delaware – transfer is often inappropriate."[56]

In considering physical location in relation to the prospective venues, plaintiff notes its state of incorporation "is located a mere 30 miles from [its] principal place of business."[57] The NDCA, however, is more convenient for defendant as its headquarters and employees are located there.[58] Plaintiff contends defendant's argument regarding expense and extreme hardship is "not credible" because defendant "actively engages in business throughout the United States and in India, Europe and the Middle East."[59] When considering plaintiff's potential inconvenience of litigating in California in conjunction with the existent convenience of remaining in Delaware, it purports this factor favors denial of the motion to transfer.[60]

---

[53] *Jumara*, 55 F.3d at 879.
[54] *Fuisz Pharma*, 2012 WL 1820642, at *12 (citing *Microsoft Corp. v. Geotag Inc.*, 847 F. Supp. 2d 675 (D. Del. 2012); *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 595 (D. Del. 2008)).
[55] *Intellectual Ventures*, 842 F. Supp. 2d at 756.
[56] *Id.* at 751 (quoting *Praxair, Inc. v. ATMI, Inc.*, C.A. No. 03-1158-SLR, 2004 WL 883395, at *1 (D. Del. Apr. 20, 2004)).
[57] D.I. 24 at 11.
[58] D.I. 15 at 2.
[59] D.I. 24 at 11.
[60] *Id.*

In response, defendant points to plaintiff's apparent healthy financial condition as a self-described "leading provider of location determination and intelligence solutions for the safety and national security markets worldwide."[61]  Defendant further emphasizes the alleged economic benefit to plaintiff as a subsidiary of Liberty Media, whose holdings include "QVC, Expedia, the Atlanta National League Baseball club . . . and SiriusXM Radio."[62]  Defendant argues, based on plaintiff's economic information available on the internet, convenience of the parties according to their relative financial conditions favors transfer to the NDCA.[63]

Neither party's argument is persuasive as this case involves two multi-national corporations, both proclaiming to have interests and activities spanning the globe.[64] Additionally, neither party "has made an effective case that its size or financial status gives rise to a real disability that should be taken into account here."[65]  "[A]lthough any litigation may bring with it the prospect of inconvenience to a party or its employees, there is nothing in the record that demonstrates that litigating in either forum-at-issue would impose a serious or undue logistical or operational burden."[66]  Further, plaintiff, although a subsidiary of Liberty Media, is a distinct, separate legal entity.

As a result, when analyzing the financial circumstances of the parties, incorporation in Delaware tips the balance under this part of the convenience analysis. "'Given that both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware.'"[67]

---

[61] D.I. 30 at 6 (citations omitted).

[62] *Id.* (citations omitted).

[63] *Id.*

[64] *See Intellectual Ventures*, 842 F. Supp. 2d at 751 ("When transfer is sought by a defendant with operations on a national or international scale, that defendant 'must prove that litigating in Delaware would pose a unique or unusual burden on [its] operations.'") (quoting *L'Athene*, 570 F. Supp. 2d at 592).

[65] *Fuisz Pharma*, 2012 WL 1820642, at \*13.

[66] *Id.*

[67] *Intellectual Ventures*, 842 F. Supp. 2d at 756 (quoting *Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011)).

"[W]hen a corporation chooses to incorporate in Delaware and accept the benefits of incorporating in Delaware, it cannot complain once another corporation brings suit against it in Delaware."[68] Taking all relevant considerations into account, and recognizing "[t]he defendant's state of incorporation . . . should not be dispositive,"[69] this factor weighs against transfer.

### v. Convenience of the witnesses to the extent that they may actually be unavailable for trial in one of the fora

The convenience of the witnesses is another relevant factor, "but only to the extent that the witness may actually be unavailable for trial in one of the fora."[70] "'[I]n reviewing a motion to transfer, courts frequently look to the availability of witnesses as an important factor, as it can be relevant to protecting a defendant's opportunity to put on its case with witnesses who will appear in person at the trial.'"[71] The weight attributed varies depending on the type of witness at issue.

> Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies (especially in an action for patent infringement) because they "are usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis.[72]

"With respect to the last category – fact witnesses with first-hand knowledge – the Court should be particularly concerned not to countenance undue inconvenience to third-party

---

[68] *Mallinckrodt Inc. v. E-Z-Em, Inc.*, 670 F. Supp. 2d 349, 357 (D. Del. 2009).
[69] *Link_A_Media*, 662 F.3d at 1224.
[70] *Jumara*, 55 F.3d at 879.
[71] *Fuisz Pharma*, 2012 WL 1820642, at *14 (quoting *ADE Corp. v. KLA- Tencor Corp.*, 138 F. Supp. 2d 565, 569 (D. Del. 2001)).
[72] *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998) (internal citations omitted).

11

witnesses, who have no direct connection to the litigation."[73]

Plaintiff argues defendant presents no contention or any evidence that non-party witnesses will be unavailable for trial, but merely concludes the NDCA is the more convenient forum.[74]  Defendant contends that despite plaintiff's representation that four of the five inventors of the patent-in-suit reside near Delaware, the "non-party fact witnesses . . . warrant greater consideration inasmuch as they can be expected to provide the more relevant evidence to this case."[75]  Defendant stresses "the non-party fact witnesses in the NDCA – and any relevant documents in their possession, custody and control – would not be subject to this District's subpoena power."[76]

Although "the defendant bears the burden of establishing that the balance of convenience and fairness strongly favors the defendant,"[77] plaintiff notably fails to identify any potential non-party witnesses who are not available in the NDCA.  Instead, it argues "[e]ven if there are non-party witness [sic] who refuse to appear at trial, this factor will still not favor transfer as, at the very least, the deposition of such a party can be compelled."[78]  Conversely, defendant identifies as relevant and necessary witnesses, "three former employees and two third party contractors involved in the design and development of the accused products, along with representatives of Agilent Technologies and Hewlett-Packard Co., all of whom are located in the NDCA."[79]  On the whole, convenience to non-party witnesses favors transfer.  This factor, however, warrants limited weight since unavailability and lack of cooperation of non-party

---

[73] *Intellectual Ventures*, 842 F. Supp. 2d at 757.
[74] D.I. 24 at 12.
[75] D.I. 30 at 7.
[76] *Id.* at 8.
[77] *Ivoclar Vivadent AG v. 3M Co.*, C.A. No. 11-1183-GMS-SRF, 2012 WL 2374657, at *7 (D. Del. Jun. 22, 2012) (citing *Jumara*, 55 F.3d at 879-80; *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).
[78] D.I. 24 at 12.
[79] D.I. 30 at 7.

witnesses are not presumed.[80]

### vi.    Location of the books and records

The Federal Circuit recognizes "[i]n patent infringement cases, the bulk of the
relevant evidence usually comes from the accused infringer.  Consequently, the place
where the defendant's documents are kept weighs in favor of transfer to that location."[81]
However, "recent technological advances have reduced the weight of this factor to
virtually nothing"[82] as they "have significantly lessened the burden of litigating in a
distant district."[83]  Such "technologies have shortened the time it takes to transfer
information, reduced the bulk or size of the documents or things on which the
information is recorded and can be transferred, and have lowered the cost of moving
that information from one place to another."[84]  Although recent technological advances
have rendered this factor less important, it must be considered and not completely
ignored.[85]

In opposing transfer, plaintiff argues "there are relevant documents and
equipment in Delaware.  TruePosition maintains a facility in the Wilmington, Delaware
cellular network.  It was at this Delaware facility that the technology relevant to this case

---

[80] *See Ivoclar*, 2012 WL 2374657, at *11 ("The practical impact of this factor is limited
by the fact that few civil cases proceed to trial, and at trial, few fact witnesses testify
live."); *see also Tessera, Inc. v. Sony Elecs. Inc.*, C.A. No. 10-838 (RMB)(KW), 2012
WL 1107706, at *6 (D. Del. Mar. 30, 2012) ("The better approach is to recognize that
witnesses have and will appear here without having to be subpoenaed.  Rather than
starting with a presumption that witnesses may not appear and concluding the case
should be transferred based on that assumption, it may make more sense to look at the
facts and circumstances of each witness to see whether a subpoena is necessary.")
(citations omitted).
[81] *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).
[82] *Affymetrix*, 28 F. Supp. 2d at 205.
[83] *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, C.A. No. 01-199-SLR,
2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001).
[84] *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del.
1993).
[85] *See Link_A_Media*, 662 F.3d at 1224 ("While advances in technology may alter the
weight given to these factors, it is improper to ignore them entirely.").

13

was developed and tested."[86] Defendant emphasizes the location and nature of relevant documents in its possession, factors it believes strongly warrants transfer.[87]

Neither party alleges it would be unable to produce any relevant books and records in either forum. However, the bulk of the evidence will come from the accused infringer, Polaris, whose records are situated in California. Considering the location of the relevant evidence, the absence of any indication that it will be unduly burdensome to bring relevant evidence to Delaware or the Northern District of California, and the Third Circuit's characterization of this factor, the location of the books and records favors transfer, but in light of technology and case law, is given limited weight.

## B. Public Interest Factors

### i. Enforceability of judgment

There is no dispute as to the enforceability of a judgment in either the District of Delaware or the Northern District of California. Thus, this factor is neutral.

### ii. Practical considerations that could make the trial easy, expeditious, or inexpensive

As part of the public interest factors, the court considers the "practical considerations that could make the trial easy, expeditious, or inexpensive."[88] Polaris contends "the practical considerations associated with litigating in the NDCA would make the trial 'easier, quicker, or less expensive' than proceeding in this venue."[89] Polaris goes on to list a variety of arguments and factors that would push this factor in its favor. First, Polaris claims, by transferring the case, expense and disruption to its day-to-day business operations would be reduced. It further argues transfer would

---

[86] D.I. 24 at 12.

[87] *See* D.I. 15 at 9 ("Polaris should not be forced to ship its most valuable asset across the country."); *see also* D.I. 30 at 3 ("The fact remains that the relevant documents, including Polaris's confidential design and development documents and its highly confidential source code, along with certain non-party fact witnesses' documents, are located in the NDCA and not the District of Delaware.").

[88] *Jumara*, 55 F.3d at 879.

[89] D.I. 15 at 12.

"provide a venue that has subpoena power over potentially relevant third party witnesses and documents."[90]

TruePosition disputes Polaris's claims, arguing practical considerations "strongly favor the adjudication . . . in Delaware."[91] First, it notes it has previously litigated in this jurisdiction on four occasions. It maintains Polaris's argument ignores TruePosition's practical considerations, such as subpoena power and the inconvenience of transfer:

> Polaris again completely ignores the convenience of TruePosition and the location of at least four TruePosition witnesses. Four out of the five named inventors reside within the subpoena power of the District of Delaware. Moreover, TruePosition's principal place of business is a mere 30 miles from the District of Delaware, whereas the Northern District of California is over 3000 miles away.[92]

TruePosition notes the increase in distance resulting from transfer would cause significant inconvenience, and emphasizes that Polaris "willfully chose Delaware as its state of incorporation."[93] Each party claims inconvenience in the other parties' chosen location, and neither makes a compelling argument. Thus, this factor is also neutral.

### iii. Administrative difficulties in getting the case to trial

The third public interest factor is the "relative administrative difficulty in the two fora resulting from court congestion."[94] Although both parties reference case-disposition statistics, TruePosition complains Polaris' statistical information showing the median time to trial in California at 25.3 months, with the median time in this district at 31 months is dated, pointing to more recent case-disposition statistics of "29.4 months for Delaware and 25.4 months for California."[95]

Relying on its statistics, Polaris concludes the purported congestion in this district supports transfer, while TruePosition counters the four to five month difference does

---

[90] *Id.* at 13.
[91] D.I. 24 at 13.
[92] *Id.* at 13-14.
[93] *Id.* at 14
[94] *Jumara*, 55 F.3d at 879.
[95] D.I. 24 at 15 (internal citations omitted).

15

not justify transfer. TruePosition further notes if speedy resolution through trial was a
legitimate concern by Polaris, "it would not have proposed discovery be postponed until
the resolution of the current motion."[96] Polaris' argument is unpersuasive, and the court
doubts "any disparity in court congestion, to the extent there is any, will be so great as
to weigh strongly in favor of a transfer."[97] This factor does not support transfer.

### iv. Local interests in deciding local controversies at home

"In patent litigation, the local interest factor is typically neutral, 'because patent
issues do not give rise to a local controversy or implicate local interest.'"[98] Furthermore,
"it is well settled that patent rights are not considered state or local matter . . . ."[99]
However, while "the sale of an accused product offered nationwide does not give rise to
a substantial interest in any single venue, if there are significant connections between a
particular venue and the events that gave rise to a suit, this factor should be weighed in
that venue's favor."[100]

Polaris contends, however, California "has a strong local interest in resolving this
dispute,"[101] because of its "substantial presence within the venue and the alleged facts
giving rise to TruePosition's claim occurred"[102] in that state.

TruePosition maintains the location of Polaris' employees does not transform the
matter "into a local California controversy where a Delaware corporation is accused of
infringing the patent of another Delaware corporation."[103] While TruePosition does not

---

[96] *Id.*

[97] *Textron Innovations, Inc. v. The Toro Co.*, C.A. No. 05-486-GMS, 2005 WL 2620196,
at *3 (D. Del. Oct. 14, 2005).

[98] *Fuisz Pharma LLC v. Theranos, Inc.*, Civ. No. 11-1061-SLR-CJB, 2012 WL 1820642,
at *17 (D. Del. May 18, 2012) (quoting *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537
F. Supp. 2d 635, 643 (D. Del. 2008)).

[99] *Acuity Brands, Inc. v. Cooper Indus., Inc.*, C.A. No. 07-444-GMS, 2008 WL 2977464,
at *3 (D. Del. July 31, 2008) (citing *Jones Pharma, Inc. v. KV Pharm. Co.*, C.A. No. 03-
786-JJF, 2004 WL 323109, at *3 (D. Del. Feb. 17, 2004)).

[100] *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

[101] D.I. 15 at 13.

[102] *Id.*

[103] D.I. 24 at 14.

16

dispute that the relevant facts occurred in California, this is not significant enough to turn a patent dispute between two Delaware corporations into a local California controversy. Therefore, this factor is neutral.

### v. Public policy of the fora

"The public policy of Delaware encourages the use by Delaware corporations . . . of Delaware as a forum for the resolution of business disputes."[104] Both TruePosition and Polaris are Delaware corporations. Polaris does not address this factor, conceding it is neutral.[105] TruePosition, however, maintains this factor "favors the adjudication of the dispute . . . in Delaware."[106] Its argument is corroborated by the Federal Circuit, which determined "[g]iven that both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware."[107] This factor disfavors transfer.

### vi. Familiarity of the trial judge with applicable state law in diversity cases

Because this action is not based on diversity, but on patent law, its "'claims are governed by federal law, and as such both [courts are] capable of applying patent law to infringement claims.'"[108] The parties do not dispute or address this factor, therefore its application to the court's analysis is neutral.

## III. CONCLUSION

"[T]he Court has endeavored to evaluate each of the many private and public interest factors identified by the Third Circuit, and has also considered whether any

---

[104] *Robocast, Inc. v. Apple, Inc.*, C.A. No. 11-235-RGA, 2012 WL 628010, at *4 (D. Del. Feb. 24, 2012).
[105] D.I. 15 at 12 ("The remaining public interest factors of judgment enforceability, public policy, and judicial knowledge of state law are neutral when it comes to determining transfer in patent cases because of the federal nature of patent law.").
[106] D.I. 24 at 14.
[107] *Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311, 1332 (Fed.Cir.2011).
[108] *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760 (D. Del. 2012) (quoting *In re TS Tech Corp.*, 551 F.3d 1315, 1320 (Fed.Cir.2008)).

additional interests are pertinent."[109] The following interests weigh against transfer: plaintiff's choice of forum, the convenience of the parties, the administrative difficulties in getting the case to trial, and public policy considerations. Factors in favor of transfer include: defendant's choice of forum, location of operative events, convenience to witnesses, and location of relevant records. The remaining interests are neutral. Applying the proper weight to each factor, and avoiding undue weight to any one in particular, defendant has failed to satisfy its burden of showing that the *Jumara* factors weigh strongly in favor of transfer.[110] Accordingly, defendant's motion to transfer should be denied.

## IV.    ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, the court recommends:

(1) Defendant's motion to transfer to the Northern District of California (D.I. 14) is denied.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen days after being served with a copy of this Report and Recommendation.[111] The objections and response to the objections are limited to ten pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Date: October 25, 2012                                       /s/ Mary Pat Thynge
                                               UNITED STATES MAGISTRATE JUDGE

---

[109] *Id.* at 753.
[110] *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (Fed. Cir. 1970) ("[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.").
[111] FED. R. CIV. P. 72(b)(2).

18