IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**TruePosition, Inc.,**

Plaintiff,

v.

Civil Action No. 12-646-RGA

**Polaris Wireless, Inc.,**

Defendant.

MEMORANDUM ORDER

Before the Court is Plaintiff TruePosition's Objections to the Report and

Recommendation on Claim Construction (D.I. 226) and Polaris Wireless, Inc.'s Opposition to

Plaintiff TruePosition, Inc.'s Objections to the Report and Recommendation on Claim

Construction. (D.I. 229). The Report and Recommendation on Claim Construction concluded

that the term "means for detecting," present in claims 113 and 114 of U.S. Patent No. 7,783,299

("the '299 patent"), is invalid as indefinite under 35 U.S.C. § 112, ¶ 2, because a corresponding

algorithm was not disclosed. (D.I. 221 at 21-22). Plaintiff objects. The Court heard oral argument

on this issue on May 12, 2014. (D.I. 235).

The '299 patent relates generally to a wireless location system ("WLS") which is used to

locate a wireless device operating on a wireless communications system. ('299 patent at 4:39-

42). The WLS may locate the wireless device by monitoring signaling links, detecting a

predefined signaling transaction, and then triggering a location service. ('299 patent at 4:42-48).

Claims 113 and 114 include the limitation "means for detecting at least one predefined network

transaction involving a predefined trigger occurring on at least one of said predefined signaling

1

links." The parties agree that this is a means plus function limitation, that the function is "detecting at least one predefined network transaction involving a predefined trigger occurring on at least one of said predefined signaling links," and that the corresponding structure is hardware programmed to perform the detecting function. (D.I. 226 at 4; D.I. 229 at 6-7; *see* D.I. 221 at 20). The parties disagree as to whether the patent discloses a corresponding algorithm.[1]

In front of the Magistrate Judge, TruePosition contended that the algorithm was, "[s]etting one or more indicia of a mobile origination or mobile termination transaction and detecting a mobile origination or mobile termination transaction by comparing the one or more indicia of a mobile origination or mobile termination transaction with the monitored data to find a match." (D.I. 221 at 19). Essentially, TruePosition's proposed algorithm is setting a trigger and waiting until the trigger is tripped. Polaris contended that the link monitoring system ("LMS") was the corresponding structure, but that there was no corresponding algorithm, and therefore the means plus function term was indefinite. (D.I. 220 at 20).

The Magistrate Judge agreed with Polaris that the means plus function term was indefinite because the specification does not disclose an algorithm. (D.I. 221 at 21-22). In reaching this conclusion, the Magistrate Judge looked to Figures 3B, 3C, 3D, and 3E, each of which states that "[t]he Wireless Location System Sets the ... Trigger in the LMS." (D.I. 221 at 21 *citing* '299 patent Figures 3B, 3C, 3D, and 3E). The Magistrate Judge concluded that, "It is the WLS that sets the trigger in the LMS, then the LMS can begin monitoring, after which, the LMS can detect call origination. Therefore, the 'setting' function is not part of 'detecting.' As a

---

[1] It appears that the parties also disagree to some extent as to the particularities of the corresponding structure. Polaris contends that the corresponding structure is specifically the link monitoring system ("LMS"), but TruePosition contends that the structure is a computer or server programmed to detect a predefined network transaction. (*See* D.I. 221 at 19-20). Because the LMS appears to be a computer or server programmed to detect a predefined network transaction, the difference is not material.

2

result, there is no algorithm tied to the function of the 'means for detecting' and the claim is invalid as indefinite under 35 U.S.C. § 112, ¶ 2." (D.I. 221 at 21). The Magistrate Judge essentially concluded that because something other than the corresponding structure performs the "setting" step, setting cannot be part of "detecting." Once the "setting" step is removed, TruePosition's proposed algorithm becomes "comparing," which does not provide sufficient structure, as "comparing" is merely another way of saying "detecting."

Polaris spends much of its Opposition pointing out that TruePosition is raising new arguments that were not previously before the Magistrate Judge. (D.I. 229 at 8 n. 2, 10, 11 nn. 4 & 5, 12). I agree that some of TruePosition's arguments are new, and I therefore do not reach them. I base my decision on the briefing and argument that was before the Magistrate Judge. (*See* D.I. 226-1 at 1-2). I do, however, consider the patent as a whole, regardless of whether particular sections were previously cited. I review the Magistrate Judge's recommendation for claim construction *de novo*.

One of Polaris' better arguments was in its responsive claim construction brief. There, Polaris pointed out that "[b]ecause the function of 'detecting' as claimed is performed on *predefined* network transactions, the network transactions would have to be 'set,' *i.e.* 'predefined,' before the detection function is performed. To include 'setting' into the 'means for detecting' algorithm renders '**pre**'-defined superfluous." (D.I. 169 at 14) (emphasis in original). While Polaris sets forth a logical argument, it does not differentiate between a predefined network transaction and a predefined trigger. The claims do. Claim 113 makes clear that a "predefined network transaction" includes either a "mobile origination transaction" or a "mobile termination transaction." ('299 patent at 50:33-35). Claim 114 does not similarly limit the "predefined network transaction." Claim 114 does, however, make clear that a "predefined

3

network transaction" is separate from a "predefined trigger," as it states that a "predefined trigger" includes either a "dialed digit trigger" or a "Mobile Station Identification (MSID) trigger." ('299 patent at 50:58-60). The "predefined network transaction" is what is detected, and it is detected by the use of a "predefined trigger." The specification states that "[a] trigger for wireless location consists of a transaction and a filter. If a transaction occurs and the filtering matches, then a location trigger is generated." ('299 patent at 13:8-10). The WLS sets the filter, but it does not predefine a network transaction. The "predefined network transaction" is detected based on the generation of a trigger. Because one cannot detect what one is not looking for, the filter must be "set" prior to a transaction being "detected." Therefore, I find that "setting" is part of "detecting."

As for the Magistrate Judge's conclusion that something other than the corresponding structure performs the "setting" step, I disagree. There are two reasons on which I base my disagreement. The first is that the WLS is the system, and the LMS is a component of that system.[2] ('299 patent at 4:39-57). Therefore I do not believe that the WLS can independently perform the function of "setting," but a user must input information into the WLS, which causes the LMS to be set. The second is that no matter the description, the LMS is "set to detect." ('299 patent at 23:11-13; figures 4, 5A). I do not think it matters whether the WLS sets the LMS or the LMS is set. In either case, the result is the same: the LMS is set to trigger upon certain events. It accomplishes this by a filter match. ('299 patent at 13:9-10). The system is told to trigger upon a filter match. The filter must be put in place. The fact that something other than the LMS might send the signal to place the filter does not make the claim indefinite.

---

[2] At oral argument, Polaris pointed out that the claims are drawn to a "system for use by a wireless location system (WLS)," and therefore the LMS cannot be a part of the WLS because they are separate systems. I disagree. The claims are drawn to a subsystem of the WLS. They are still part of the WLS.

4

While I do not agree with all of the Magistrate Judge's reasoning, I agree with the conclusion. Even assuming that the LMS performs the "setting" step, this does not provide sufficient structure. The proposed algorithm merely restates the function.[3] As I stated earlier, one cannot detect what one is not looking for. Requiring that the LMS be "set" prior to "detecting" does not add anything to simply "detecting." The proposed algorithm provides "nothing more than a restatement of the function, as recited in the claim." *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008). This is not enough of an algorithm to provide the necessary structure.

I conclude that Polaris has met its burden of proving the claim limitation "means for detecting" invalid as indefinite. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) ("[W]e hold that a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."). I therefore adopt the Magistrate Judge's Report and Recommendation on Claim Construction (D.I. 221), as modified by the above, as my claim construction.

Entered this 26th day of August, 2014.

United States District Judge

---

[3] "Setting one or more indicia of a mobile origination or mobile termination transaction and detecting a mobile origination or mobile termination transaction by comparing the one or more indicia of a mobile origination or mobile termination transaction with the monitored data to find a match." (D.I. 221 at 19).